# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KYE S. BARKER, a single woman; and D-SONG LLC, a Washington limited liability company, | ) ) ) ) | No. 77745-9-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| TOWN OF RUSTON, a political subdivision of the State of Washington; the RUSTON POLICE DEPARTMENT; BRUCE HOPKINS, the Ruston Town Mayor; JEREMY KUNKEL, the Ruston Police Chief; JAMES KAYLOR, an officer of the Ruston Police Department; VICTOR CELIS, an officer of the Ruston Police Department; and "JOHN DOE 1-5," officers of the Ruston Police Department, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | FILED: May 7, 2018 |

LEACH, J. — Kye Barker appeals a summary judgment dismissing her claims against Town of Ruston, et al., for negligent and intentional infliction of emotional distress and tortious interference with a business expectancy. Barker does not identify a duty that Ruston police owed her or her business, provide legal argument to support her intentional infliction of emotional distress claim, or show that the officers acted improperly. Because Barker does not show a genuine issue of material fact about any of her claims, we affirm.

## FACTS

Barker and D-Song LCC (Barker) have owned and operated the Unicorn Sports Bar (Unicorn) in Ruston, Washington, since 2002. Defendant David Bruce Hopkins, Mayor of Ruston since 2008, has lived within 150 feet of what is now the Unicorn since 1992. Hopkins and his wife have made a number of noise complaints to Ruston police about the Unicorn. Generally, Barker claims that defendants Town of Ruston, Ruston Police Department (RPD), Mayor Hopkins, Police Chief Jeremy Kunkel, and other officers of the RPD (Ruston) unlawfully intimidated and harassed Unicorn customers and employees to drive the Unicorn out of business.

Victor Celis, Ruston police officer since 2010 and interim chief in 2015, stated in his deposition that he would sometimes go to the Unicorn more than once a shift to conduct "business checks" and run license plates on vehicles parked outside. He acknowledges doing "undercover surveillance" at the direction of former RPD Chief Kunkel. Celis cited Barker for "noise disturbance," which was later dismissed. He also made multiple arrests of patrons while monitoring the Unicorn and arrested Unicorn bartender, Darrell Bone, for serving alcohol to an intoxicated individual.

James Kaylor, Ruston police officer since approximately 2007, stated in his deposition that he would attempt to do his "bar checks" and "business

-2-

checks" from the outside by talking to the doorman or looking in the windows because he knew that Barker thought the officers' presence hurt business.

Shelley Drury, certified public accountant, calculated that the Unicorn suffered over $100,000 in past lost profits from 2006 to 2013 and could have up to $24,000 per year in future damages.

Barker claims that she has experienced increased stress and has difficulty eating and sleeping as a result of the officers' conduct.

Barker filed a lawsuit against Ruston in state court in July 2014.[1] She made federal law claims under 42 U.S.C. § 1983 based on the alleged violation of her Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution.[2] She also made a number of state law claims. These included defamation, unlawful taking of property, harassment, private nuisance, negligent infliction of emotional distress, intentional infliction of emotional distress, and tortious interference with a business expectancy.[3] Ruston removed the lawsuit to federal court.[4] The federal court dismissed the federal claims on summary judgment. It declined to exercise supplemental jurisdiction over the state law

---

[1] Barker v. Town of Ruston, No. C-14-5589-BHS, 2016 WL 1572546, at *1 (W.D. Wash. Apr. 19, 2016) (court order), appeal filed, No. 16-35395 (9th Cir. May 11, 2016).

[2] Barker, 2016 WL 1572546, at *4-6.

[3] Barker, 2016 WL 1572546, at *1.

[4] Barker, 2016 WL 1572546, at *1.

claims.[5] After remand to the state trial court, that court granted Ruston's motion for summary judgment and dismissed Barker's claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and tortious interference with a business expectancy. Barker conceded her remaining claims.[6] She appeals the summary judgment dismissing her state law claims.

## ANALYSIS

An appellate court reviews summary judgment orders de novo and performs the same inquiry as does the trial court.[7] Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law.[8] An appellate court reviews the affidavits, facts, and record to decide if a genuine issue of material fact exists.[9]

> A nonmoving party . . . may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth

---

[5] Barker, 2016 WL 1572546, at *6-7.

[6] Although in her opening brief Barker asserted that the trial court erred in granting Ruston summary judgment on her private nuisance claim, her appellate attorney conceded in oral argument that she did, in fact, waive this claim below.

[7] Life Designs Ranch, Inc. v. Sommer, 191 Wn. App. 320, 327, 364 P.3d 129 (2015).

[8] Life Designs, 191 Wn. App. at 327; CR 56(c).

[9] Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 12-13, 721 P.2d 1 (1986).

specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.[10]

### Negligent Infliction of Emotional Distress

Barker claims she suffered negligent infliction of emotional distress as a result of the officers' conduct. In an action for negligence, a plaintiff must prove four elements: "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause."[11]

Barker does not identify a duty that Ruston police owed her or the Unicorn. In a negligence action against a government entity like the RPD, Washington courts apply the "public duty doctrine."[12] This doctrine immunizes a public official from liability for his negligent conduct unless the injured plaintiff shows that the official owed the duty breached to the plaintiff individually, rather than to the general public, unless one of four exceptions applies.[13] Barker does not claim that the officers breached any duty they owed her or the Unicorn. Neither does she assert any of the four exceptions. Thus, no genuine issue of material fact exists, and the trial court properly dismissed the claim.

---

[10] Seven Gables Corp., 106 Wn.2d at 13.
[11] Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).
[12] Cummins v. Lewis County, 156 Wn.2d 844, 852, 133 P.3d 458 (2006).
[13] Cummins, 156 Wn.2d at 852.

## Intentional Infliction of Emotional Distress

Next, Barker claims intentional infliction of emotional distress. To establish intentional infliction of emotional distress, a plaintiff must prove three elements: "'(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress.'"[14] Barker provides no legal argument or factual bases to explain her claim. An appellate brief should contain "[t]he argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."[15] A reviewing court will not consider a claim that a party fails to support with legal argument in its opening brief.[16] We decline to review this claim.

## Tortious Interference with a Business Expectancy

Last, Barker asserts tortious interference with a business expectancy. Tortious interference has five elements:

> "(1) the existence of a valid . . . business expectancy; (2) that defendants had knowledge of that [expectancy]; (3) an intentional interference inducing or causing a breach or termination of

---

[14] Dicomes v. State, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989) (quoting Rice v. Janovich, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987)).

[15] RAP 10.3(a)(6).

[16] Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 845, 347 P.3d 487 (2015).

the . . . expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage."[17]

Under Washington law, "[a]ll licensed premises used in the manufacture, storage, or sale of liquor . . . shall at all times be open to inspection by any liquor enforcement officer, inspector or peace officer."[18] "Licensed premises" means "all areas of a premises under the legal control of the licensee and available to or used by customers and/or employees in the conduct of business operations."[19] The Unicorn is a business that sells liquor. It is therefore subject to inspection at any time. Consistent with the federal district court's finding, Barker has not demonstrated that the officers exceeded their scope of authority as limited by the statute and the Fourth Amendment to the United States Constitution.[20] Because the officers did not exceed their authority, even if they interfered with the Unicorn's business expectancy, they did not do so for an improper purpose. Thus, no genuine issue of material fact remains, and the trial court properly dismissed the claim.

---

[17] Life Designs, 191 Wn. App. at 337 (alterations in original) (quoting Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 157, 930 P.2d 288 (1997)).
[18] RCW 66.28.090.
[19] WAC 314-01-005(1).
[20] Barker, 2016 WL 1572546, at *5.

## CONCLUSION

Barker does not show a genuine issue of material fact about her claims for negligent infliction of emotional distress, intentional infliction of emotional distress, or tortious interference with a business expectancy. We affirm.

Leach, J.

WE CONCUR:

Spearman, J.

Cox, J.